Good morning, Your Honor. Good morning. I'm Robert Leslie. I represent Lewis C. Nelson and Sons in this petition, and I want to thank you for accepting the case for consideration. I'd like to also reserve a couple of minutes at the end for a possible rebuttal. This is an unusual case. It has to do with a disqualification of counsel due to prior representation of my client. The representation was not the kind that's been in any reported cases. This was a close, intense, personal relationship. It couldn't have been more of a personal, intense, lengthy relationship. It covered business. It covered personal. It covered marital. It covered family. Mr. Nelson, on behalf of Lewis C. Nelson and Sons and his other companies, essentially bared his soul to Mr. Marshall Whitney, who was assisted by Mr. Carroll. Every subject virtually was covered. Secrets and confidences were exchanged. This is a one-person-owned company with one or two assistants. It is not a corporation, yet there was some $2 million of legal services and hundreds of legal matters over this approximate 10-year period. This is not Hartford Insurance Company. It's got hundreds of employees that are changing jobs, moving, coming and going. It's all pure business. I was unable to find any reported cases that even come close to the situation we have here, and opposing counsel has not come forth with any either. But given the time, intensity, the nature, the personal and the business relationship, and I would submit that one of the reasons is that few attorneys do what the attorneys in this case did. They don't allow themselves to represent a successor client against their former client after this kind of a relationship. What we have here for Mr. Whitney is what some people would think would be a litigator's dream. Trial attorneys spend a lot of time and money, many spend a lot of money, on learning about the witnesses they're going to cross-examine. They spend a lot of money to learn a fraction of what Mr. Whitney knows. Mr. Whitney knows how to push the buttons. He knows how to push and pull this witness. He knows his secrets. He knows his confidences, the intangibles. Those are the kind of intangibles that the demeanor of a witness, as we all know, is every bit if not more important than the substance of what he says at trial. So is your argument that there is a substantial relationship between the prior representation and the current case based upon the comprehensive nature of the prior relationship? Yes, but that's not all. I believe that there's actual – that's one test. That's the one test that if a substantial relationship is shown between the present and the former case, there's a conclusive presumption that the attorney possesses confidential information adverse to the client. However, that's not the rule. That's just one test. The rule is the actual possession of confidential information adverse to a former client. Isn't the rule actual possession of confidential information that matters in the subsequent or present representation? There's an element of that. But usually when the test is stated, the test, the way it's stated in Amundsen, doesn't add that until later in the discussion. But presumably there has to be some sort of a connection. But it doesn't have to be a substantial relationship. Part of the problem is if it's simply the intangibles that you are appropriately concerned about. If it were simply the intangibles, then you would never have the possibility of subsequent representation because the intangibles you're always going to know from your client. I think that's a problem. But why aren't there any reported cases where there has been a personal representation? Possibly because it's an astonishing thing to do. That's my view. But astonishing, even unethical possibly, doesn't necessarily come within the legal rule, does it? No, not necessarily. Ethical does, yes. That's what we're about here, in part. Ethics and the confidence, not just the ethics, but the public confidence and trust in lawyers. Can I tell my lawyer, can I bear my soul and not have to worry it comes back to haunt me later? That's a big factor in this. Not just Mr. Nelson or Nelson's company. Then why do you need the attorney-client relationship at all? Because people bear their souls to their friends. They can never be adverse to them. And perhaps there was an attorney-client relationship and a friendship and a social relationship, but the attorney-client relationship concerned legal issues that were not substantially similar to those in this case. I can't say. There's no evidence below that there was a, quote, social relationship. It was a professional relationship, but intertwined in business comes up legal matters surrounding family and all these matters. So I can't say. There's been no evidence submitted, and I'm unaware of any, that it was a social relationship and there was disclosures in a social relationship. It was a business, as you can see by the amount of fees and matters. There was a lot of legal matters going on. Well, are you dropping your materiality argument? Because I'm hearing you say it was sort of a general relationship, close personal relationship that would affect the representation in this case. But are you dropping any particular specific issue that came up in the prior representation that would be material in this representation? That issue, no. That issue applies only with respect to the substantial relationship test, not to the underlying rule of actual possession of adverse information. And, yes, there's many court the court below was too narrow in looking at the similarities of cases, saying that this is a civil rights case and there was no civil rights cases before, which unfortunately was based on confidential information given by Mr. Marshall Whitney to the court that there was no such cases before. Putting that aside, I think that's a too mechanical approach, saying, well, this is a civil rights case. The underlying facts of this case have to do with bidding and subcontractors on a construction case. Here they actually not only possessed substantial confidential, they used it in the case. In the they told the court below, Mr. Whitney did, that Mr. He learned from representing that Mr. Nelson was experienced in matters of litigation and settlement. He was trying to tell the court, this guy's litigious and sophisticated. The county, the brief put in by Mr. Whitney talked about how Nelson's former efforts. That wouldn't really be confidential information. I mean, all you have to do is Google somebody or, or, or, and find out whether they're been involved in litigation before. Under California law, it's confidential and secrets. Secrets also include information that may be known by others, but that are not generally known. Isn't the most he could say is that he was litigious ten years ago? How, if the relationship lasted for ten years, as my understanding from the record, and then there's a followed by a period of ten years where there is no representation, the most that the lawyer will know of any import is what the client was like ten years earlier, not currently. He thought it was important to this case, important enough that he put it in his declaration to try to win a motion in this case. So I think it's absolutely pertinent. He also talked about that Nelson submitted change orders of such scope and magnitude, it called into question plaintiff's veracity and accuracy in the bidding process. That was told to the court below to try to help the county prevail on a motion. The only way that was learned by Mr. Whitney was from his representation, because Mr. Nelson never had a contract with a county to put a change order request on. When you weigh it, when the court is supposed to weigh this, you're weighing the public confidence and trust in lawyers, you're weighing Nelson's rights to confidences with the county's right to choose among thousands of lawyers. What if there had been 20 years? Is there a line? No, there's no clear line. Say again? No clear line. There is no clear line. No. And so what you have to do is make a judgment balancing the information that the lawyer supposedly gathers during the course of what is admittedly a very close relationship and the case that is currently before the court. In other words, there's no absolute rule, but at the same time there's a factor that should be considered. Yes. And the county here, in choosing among all the lawyers it has, chose to use the two lawyers who had represented Nelson, who had not represented the county in any lawsuits that we were able to find. I'd like to reserve the rest of my time. If you don't mind. Thank you. May it please the Court. Marshall Whitney appearing on behalf of the county of Fresno. Mr. Whitney, putting aside for the moment what the actual legal rule is, I mean, what are you thinking? What is my thinking? Yeah, what are you thinking when you undertake to represent a client with whom I take it your firm has no sort of retainer continuing type relationship? Well, that's actually, Your Honor. But whether you do or not, you undertake to represent a client with an adverse position to someone whom you represented for 10 years in apparently a great number of matters. So you've got to know that person extremely well. I don't care whether it's a social relationship or what. You've just got to know them very well. And I personally can't imagine sitting as far away as I am from you, having represented you for 10 years, even though it was a number of years ago, and cross-examining you. I'll answer. And he said, what is driving this? Sure. Putting aside the legal standards of review and the substantial evidence test to directly answer the Court's question, this civil rights action has no bearing on Mr. Nelson's or his company's integrity. It's all about the county of Fresno, who my firm has represented, as the record shows, in thousands of matters since 1956. It's a small community. Let me ask you this. Firms put up a wall to wall off people all the time. I don't know how large your law firm is, but presumably it's more than just you and Mr. O'Connell? Carroll. Carroll. Thank you. Sorry. Presumably it's more than the two of you. Why not have somebody else in the firm do it and wall yourself off? Well, that certainly was an objective if the client wanted that, and if it – No, it's not a question of what the client wants. I mean, it's a question of professional integrity. That's what it's a question of, and it's what I'm deeply questioning. All right. Can I just follow up on that? Because it's not clear to me, was Nelson and Sons attempting to disqualify the whole firm or just you and Mr. Carroll? Both. And essentially, to answer your question and Justice Reimer's question, it's because we did not set up an ethical wall and we used Marshall Whitney and Stephen Carroll, and the court's asking, why would you take it upon yourself to be the lead lawyer in a case when you have been the lead lawyer for Mr. Nelson? And it's because of – and I can't divulge the confidences of my client, the county, but I will represent to the court. It's a simple answer. Whether the court accepts it or not, I can't say. We're in a very small community. There are very few lawyers in our community that handle these kind of cases. The county has a tight fiscal budget, and they look to lawyers with specialty in this area. You know what? That's the county's problem. That's the county's problem. I mean, Los Angeles isn't that far away. Bakersfield's not that far away. Modesto, Stockton, Sacramento aren't that far away, nor San Francisco. And in one of those places, I'd be relatively confident that there's somebody who knows something about government contracting and construction work. There's no question they could have gotten it. Which is what this case is. There are plenty of qualified people, but the thing is, you just say no. I mean, isn't that an available option? Certainly. You say, no, I'm sorry, I appreciate your wishing me to represent you, but I can't. That's happened for ten years, Your Honor. You're asking me a question that is outside the record, so I feel compelled to answer. For ten years, we did not do it. Ten years changes a lot. Mr. Nelson's credibility, the way they do business, isn't relevant in this case. And that's what Judge Coyle found. And I want to get back to the legal standards before you. And I feel that you've taken umbrage with this decision we made. But at some point, the county of Fresno wanted to use our firm in this kind of matter. They wanted to use Marshall Whitney. This is an area that I've specialized in. They wanted that tool. We had turned down cases year after year. This one seemed very discreet. Because it all affects, how did the county act? Did the county discriminate against Mr. Nelson? The trial court did not apply the wrong legal standard. The trial court balanced issues of relevance, direct relevance, of the prior representations we had to the issue before the court. And the court said, like in Johnson, the passage of time made the only potential relevant issue, profit damages, totally immaterial because so much happens in the construction industry and in the business that whatever profit information I could have possibly remembered and would have presumptively known couldn't be material ten years later. And in Johnson, the interesting thing the court found there is a lawyer represented the family members and then took one side in a divorce after knowing the family's financial condition. Following Johnson to its logical extension in this case, had I represented Mrs. Nelson in a divorce against Mr. Nelson, Johnson would be essentially on all fours. I didn't do that. Credibility and things like that are an issue, but not really in this case. I made that determination. Getting to the issues that I respectfully believe are before the court, which is, did they meet their burden of substantial relationship? It all goes down to one thing. Did they, under Ferris, Jessen, Amason, and all those cases, show there was any direct connection between all those years of representation over bidding, contract disputes, and personal items and other business matters? Does that have any bearing on a 1983 case where the focus of the case, the central issue is did the county's staff, the county's decision makers, discriminate against Mr. Nelson? Let me turn it to the appearance of some impropriety. What if you get into the case and what you don't know is an issue now becomes an issue? Don't we risk that we will have a waste of resources, violation of interests of judicial economy to allow the potential for that to occur and have to start all over again? I think that's a very good question. It's a troubling one in one respect because you never know entirely what's going to happen in a lawsuit. I grant that. But I don't see that happening in this case. If it did, then I would have a new ethical issue. They would have a new ethical basis for a motion to recuse. What you have before you, as Amason says and this Court has said in Trone, the scope of the pleadings is what you look at in making that determination today. And the pleadings and the evidence that they've offered, and they had ample opportunity to do so, the evidence they offered doesn't implicate that at all. All they say is the intangibles. That's an automatic recusal rule, as Justice points out. If it's the intangible issue, then every time a client says they got to know me, they prepared me for a deposition, that client has automatic disqualification of that lawyer ever again in totally unrelated cases. But to answer your question again and repeat it, if that issue surfaced again, they always have the right to make a motion to recuse. We always have the ethical obligation to revisit, and we would have to deal with our client ethically on the financial issues. One question I have is why do you have to take this particular deposition? That seems to be what has brought you into our Court, is the pending deposition. For the record, when the deposition was set, I was in trial. I wasn't going to take the particular deposition. That's just their statement. On the record, I think the Court had to presume it was correct, but the fact was I wasn't taking that deposition. I don't have to take the deposition. What has to happen is the client has asked me to defend them in a serious claim, which we believe is based mostly on an administrative record of the county's past actions in treating admitted mistakes in a public bid. This isn't about how they bid. They said we made a mistake. You grant relief to everybody else. Why not us? Shouldn't we be careful if you make that statement, I wasn't going to take the deposition, that you now have identified something that should be of concern to us? No. The answer is I don't think whether I take the deposition or not should be a basis for the Court's decision because you shouldn't accept that. It's not in the record. I think you should presume that any lawyer in the case in my firm could take that deposition if there's that risk. I don't believe whether I take that witness's deposition or not should make a difference in this case because if a lawyer is told if you've represented this witness before and you can push their buttons or you know where they're credible or not, that's automatic recusal. That's all a client ever has to say. I appreciate the candid questions, and if I have answered yours, I'll submit it. All right. Mr. Leslie. Mr. Whitney says that there's no integrity of Nelson at issue here, yet the county has made it an issue, it's wanted to take these depositions, has proceeded ahead with discovery as if integrity and all these other matters of subcontracting are issues. I find it hard to understand how a case has been turned down by McCormick Barstow for the county because Nelson's not sued the county before. Thank you. Thank you, Mr. Leslie. Thank you. The matter just argued will be submitted.
judges: Rymer, Wardlaw, Ware